HAMILTON COAL CO. *v.* BERNHARD *et al.*

(*Supreme Court, General Term, Fifth Department.*    October 23, 1891.)

**1. CORPORATION—CONTRACTS OF AGENTS—RATIFICATION.**
     One R., as secretary of plaintiff coal company, executed a contract in plaintiff's name, agreeing to sell defendants coal at certain prices. R. testified that he signed the contract without authority from plaintiff, but at the request of one D., who was authorized by plaintiff to enter into any contract for the sale of coal, subject to the approval of the board of directors; and he produced a by-law of plaintiff which provided that "no contract made by any officer or agent of the company shall be valid without the previous authorization or subsequent ratification of the board of directors." It did not appear that the board had repudiated the contract. R. further testified that the object of the contract was to show that defendants had a right to sell plaintiff's coal so as to enable them to make sales. Defendants addressed all their communications to plaintiff, and the replies were always signed in the company's name by the secretary. It appeared that R. had authority to fix the rates at which coal should be sold to defendants. Part of the coal was delivered after the execution of the contract, and in an action for the price thereof defendants set up a breach of the contract in question as a counter-claim. *Held*, that it was error to exclude the contract from evidence, as there was evidence from which the jury might have found that plaintiff ratified it.

**2. TRIAL—AFFIRMATIVE OF ISSUES—COUNTER-CLAIM.**
     Where an answer admits all the averments of the complaint, and sets up a counter-claim as a defense, the affirmative of all the issues raised by the pleadings is on defendant.

Exceptions from circuit court, Monroe county.

Action by the Hamilton Coal Company against Charles Bernhard and another. Upon a verdict for plaintiff, defendants move for a new trial, and the exceptions were ordered to be heard at general term in the first instance.

Argued before DWIGHT, P. J., and MACOMBER and LEWIS, JJ.

*M. A. Gearon*, for plaintiff.    *John A. Bernhard*, for defendants.

MACOMBER, J. This action was brought to recover the price of 371.9 tons of run of mine coal, at the agreed price of 80 cents per ton, and of 69.07 tons of slack coal, at the agreed price of 25 cents per ton, which was all sold and delivered by the plaintiff to the defendants during the month of May, 1885. The

answer admitted these allegations of the complaint, that the value of the coal was $314.96, and that the same became due and payable June 15, 1885. The further answer of the defendants is a counter-claim for damages for breach of a written contract between the parties, as follows:

"THE HAMILTON COAL COMPANY, BUFFALO OFFICE.

"No. 23 West Swan Street.

"BUFFALO, N. Y., May 1st, 1885.

"Memorandum of agreement between the Hamilton Coal Company of Buffalo, N. Y., and Bernhard & Casey, coal dealers of Rochester, N. Y. Said Bernhard & Casey are to have the exclusive sale of our coal in Rochester, N.Y., and that locality, during the year ending May 1, 1886; the coal to be delivered on board cars at Rochester, at the following prices: Screened lump, $2.55; lump and nut, $2.45; run of mine, $2.30; nut, $2.25; nut and slack, $1.95; slack, $1.75, (as dealers, 10 cents per ton less than these figures,)—subject only to such changes as the board of coal commissioners may direct, and increase or decrease of freight rates; also understanding that, to have this exclusive control, at least fifteen thousand tons must be sold. Said dealers looking after and paying the freight charges. Payments for the coal to be made on or before the fifteenth of the following month. The coal company furnishing none but coal mined from their own mines at Reynoldsville, Pa., at such times as ordered, and are not accountable for any delays, such as strikes, railway delays, beyond the control of the coal company.

"HAMILTON COAL COMPANY.

"R. C. RICE, Secretary."

The plaintiff is a corporation organized under the laws of the state of Ohio, and it had, at the time stated, an office in the city of Buffalo, N. Y., where it conducted a general business of selling coal. At this office the board of directors occasionally met for the transaction of business. There were usually present the general agent of the company, Mr. Dennison, and the secretary, R. C. Rice, who was also one of the directors of the plaintiff. Preceding the execution and delivery of this paper, the plaintiff, by Mr. Rice, as its secretary, had addressed to the defendants a letter bearing date January 10, 1885, which is, in substance, that he had laid before the board of directors the question of the price of coal to be furnished to the defendants, stating such price as follows:

"We will deliver on board cars at our mines at Reynoldsville, Pa., mine run coal, our best quality, at eighty cents per net ton; lump and nut, $1.00 per net ton; lump coal, $1.10 per net ton; nut and slack, sixty-five cents per net ton; nut coal, eighty cents per net ton; slack, forty cents per net ton; and on the supposition that you will take our coal continuously during the season; but, if only ordering occasionally, the rate will be five cents per ton higher on all grades. These rates, with $1.30 freight, we hope will enable you to compete successfully with any others.

[Signed]      "HAMILTON COAL COMPANY.

"By R. C. RICE, Secretary."

On the trial the court properly ruled that the affirmative of the issue made by the pleadings rested upon the defendants. As the complaint and answer were framed, it was clear that the plaintiff was not required to prove any fact to entitle it to the judgment which was directed, namely, the sum of $314.96, unless the affirmative defense, stated as a counter-claim, should prevail in whole or in part.

The defendants called as a witness, upon the question of their counter-claim, the plaintiff's secretary, R. C. Rice, and upon his evidence, mainly adduced upon cross-examination made by the plaintiff's counsel, the court rejected from the case as evidence the written contract above set forth. To such ruling an exception was taken, and it is upon this exception that the defendants' case mainly depends.

The testimony of the witness Rice is to the effect that at the time stated he was the secretary of the company; that he spent a considerable time at the Buffalo office, where there were two other employes of the company besides himself; that Charles W. Dennison was the sole agent for the sale of coal in the state of New York, and had power to enter into any contract for the sale of coal subject to the board of directors; that he (the witness) had presented to the board of directors a communication from the defendants, received by him prior to March, 1885, and that in pursuance of the orders of the board he wrote the letter of January 10, 1885; that the written contract above mentioned was signed and mailed by him to the defendants at the solicitation of Mr. Dennison, sales agent of the plaintiff; but that he had had no talk with the defendants about the contract before he wrote it. He testifies that he never was authorized by the plaintiff, or by its board of directors, to make, sign, or deliver this instrument. He produced and proved the by-law of the plaintiff which reads as follows: "No contract made by any officer or agent of the company shall be valid without the previous authorization or subsequent ratification of the board of directors." Such was the substance of the evidence upon which the defense was excluded. Rice, it appears, however, was permitted to testify, without objection, that the object of the written paper was to enable the defendants to get contracts for coal by having something to show to purchasers that they had the handling of this particular coal at Rochester exclusively, and that they would be able to fill orders for it in large amounts; and that he "did not consider this paper a contract between our company and Bernhard & Casey." He gave further testimony from which it is argued in behalf of the plaintiff that the coal for which this action was brought was not delivered under the alleged contract, but under a previous contract between the parties. This portion of his evidence, however, is contradicted by the defendant Bernhard, who testified that the prices set forth for the coal mentioned in the contract are at the rates specified in the instrument of May 1, 1885, with the freight rates added; and that after receiving this contract the defendants purchased coal from the plaintiff, and had it shipped to Rochester, where they sold it; and that the coal which they received was ordered under this contract, and delivered in the month of May, and is the same coal for which this action was brought. It is further shown that the defendants addressed their communications invariably to the Hamilton Coal Company at its Buffalo office, and that the responses came in the manner named, namely, signed in the company's name by its secretary. There is not evidence in the case that the company, in terms, ever repudiated the making of the written contract. The testimony of the witness Rice, while in form denying his authority to make a contract of this description, shows that he was, at the time of signing the paper in the company's name, authorized to fix the rates for the price of coal which should be sold and delivered to the defendants, and that this particular instrument was made in pursuance of the request of Dennison, who, as Rice testified, was the general agent of the plaintiff for the sale of coal in western New York. The contract, therefore, which was offered in evidence and rejected by the court, appears to have been executed in the general line of the plaintiff's business, and under the direction of its accredited managers; and consequently the claim set up at the trial in behalf of the plaintiff, that Rice was not authorized to make the contract, was untenable, especially as it is shown by the defendants' testimony that the plaintiff had partially executed the contract by delivering a portion of the coal after its execution. The case, therefore, as presented by the appeal papers, is one where, from the evidence, the jury would have been justified in holding that the company had ratified the contract made by its secretary by delivering a portion of the coal, and that, consequently, even by the terms of the by-law which was put in evidence, the plaintiff's objection to the introduction of the instrument in evidence was

untenable. Unless, therefore, upon a new trial, a different state of facts is presented, the defendants will be entitled to the introduction of this instrument in evidence, to lay the foundation for their affirmative defense, namely, a breach of the written contract. The defendants' motion for a new trial should be granted. Verdict set aside, and the defendants' motion for a new trial granted, with costs to abide the event. All concur.